UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JAMES LEE HORN,

        Petitioner,

v.                                  CASE NO. 2:17-cv-10181

RANDALL HAAS,                 HONORABLE DENISE PAGE HOOD

        Respondent.
_____/


**OPINION AND ORDER**
**DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,**
**DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,**
**AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner James Lee Horn ("Horn") seeks a writ of habeas corpus under 28

U.S.C. § 2254. The habeas petition challenges Horn's convictions for second-degree

murder, carjacking, and two weapon offenses. Horn claims that (1) the evidence at

his trial was insufficient to support his murder and carjacking convictions, (2) he

was sentenced on inaccurate information and incorrectly scored sentencing

guidelines, and (3) judicial fact-finding increased the floor of the permissible

sentence. The State argues in an answer to the petition that the state court's

adjudication of Horn's first claim was objectively reasonable, and Horn's second

claim lacks merit because his sentences were not based on misinformation of

constitutional magnitude. The State maintains that Horn has already obtained some

relief on his third claim and that the claim is not based on clearly established federal law. Having reviewed the pleadings and record, the Court denies the petition because Horn's claims do not warrant habeas corpus relief.

## I. BACKGROUND

Horn was charged with two counts of first-degree murder, Mich. Comp. Laws § 750.316,[1] one count of carjacking, Mich. Comp. Laws § 750.529a, one count of carrying a concealed weapon, Mich. Comp. Laws § 750.227, and one count of possessing a firearm during the commission of a felony, Mich. Comp. Laws § 750. 227b. The charges arose from allegations that Horn aided and abetted co-defendants Matthew Riselay ("Riselay") and Nancy Johnson ("Johnson") in carjacking and murdering a woman at a gas station in Flint Township on March 4, 2012. Horn was tried jointly with Riselay and Johnson in Genesee County Circuit Court, but before a separate jury. A fourth defendant, Phillip Eason, pleaded guilty to being an accessory after the fact and then testified against the other three defendants at their joint trial.

---

[1] Although there was one victim, the prosecutor proceeded on two theories: that Horn premeditated the murder and committed the murder during the commission of another felony.

The evidence at trial established that, on the night of the crime, someone drove Eason and Horn to the Economy Motel in Flint Township where Johnson had rented a room. Riselay arrived later. Horn had a gun at the motel, and when he stated that he needed a ride somewhere, Riselay said he could steal a car if he had a screwdriver. Horn responded that he did not have a screwdriver, but that he did have a gun and that he needed a clean car. Riselay unloaded and re-loaded the gun. Johnson took the gun from Riselay, and the two of them left the motel to acquire a car for Horn in return for drugs or money.

The victim stopped at a gas station near the Economy Motel on her way home from work that night. At approximately 9:00 p.m., the gas station attendant noticed a commotion in a car at the station. After waiting on another customer, the attendant went back outside and saw the victim lying on the ground by the propane tanks. The victim was bleeding, and the car was gone. The police were called, and when they arrived at the gas station, the victim told them that a white woman shot her, that the shooter was accompanied by a man, and that the two individuals took the car which she had been driving.

Johnson, meanwhile, returned to the Economy Motel in the victim's car. Horn entered the car on the passenger side and took the gun from Johnson. Horn then handed the gun to Eason, who threw the gun several feet away from the motel. Horn

and Johnson parked the car on the opposite side of the motel and entered Johnson's motel room. Johnson was covered with blood, and she said more than once, "I had to kill her."

With the help of a device installed in the victim's car, the police located the car at the motel and watched it for any additional activity. During the surveillance, an officer observed Horn wipe the door handle of the stolen car on the passenger side. A minivan then approached Horn, and as Horn walked from the victim's car to the van, the officer who had been watching the stolen car stopped Horn and ordered everyone, including Eason and Johnson, to get out of the van. Riselay was detained at a later time because he lived near the motel and was not present in the van.

The victim had been shot four times and died shortly after the shooting. During the continuing investigation of the crimes, an officer interviewed Horn who admitted that he brought a loaded gun to the motel and that the gun belonged to him. He claimed that Riselay picked up the gun from the bed and said that he would use the gun to scare someone when stealing a car. Horn denied handing the gun to anyone, telling Riselay or Johnson to rob or kill anyone, or promising to forgive Johnson's drug debt in return for her help in getting a car for him.

The police also interviewed Eason, who ultimately pleaded guilty to being an accessory after the fact for tossing the gun used in the carjacking and murder. Eason explained his plea bargain at Horn's trial. Although he had not been sentenced at the time, he testified that he was promised probation and release from custody following his sentencing if he testified truthfully at proceedings involving the other defendants. Eason also admitted at the trial that he initially lied to the police and that he finally told the truth when the police informed him that they had found the gun.

An expert witness in firearms testified that the gun was used to fire one of the bullets in evidence. Another expert witness testified that the victim's blood was present inside the motel, on the gun, and on Johnson's clothing.

Horn, Riselay, and Johnson did not testify at trial or present any witnesses. Horn's defense was that Eason was a liar, thief, and drug dealer and that Horn was not guilty of any of the charges because he did not hand the gun to Riselay, nor instruct Riselay or Johnson to kill anyone.

On May 3, 2013, Horn's jury found him guilty of two counts of second-degree murder, as a lesser offense of first-degree murder, and guilty as charged of carjacking, carrying a concealed weapon, and felony-firearm. The trial court sentenced Horn on May 23, 2013, to life imprisonment for the murder, twenty to

forty years in prison for the carjacking, two to five years for carrying a concealed weapon, and two years for possessing a firearm during the commission of a felony.

Petitioner raised his habeas claims in an appeal of right. The Michigan Court of Appeals affirmed his convictions in an unpublished, *per curiam* opinion. *See People v. Horn*, No. 316757, 2014 WL 6804518 (Mich. Ct. App. Dec. 2, 2014).

The Michigan Supreme Court reversed the judgment of the Michigan Court of Appeals in part and remanded the case to the trial court for a determination of whether the court would have imposed a materially different sentence for Horn's murder conviction if the sentencing guidelines had not been mandatory when Horn was sentenced. The State Supreme Court denied leave to appeal in all other respects because it was not persuaded to review the other issues. *See People v. Horn*, 498 Mich. 903; 870 N.W.2d 896 (2015).

On remand, the trial court declined to re-sentence Horn. Horn did not appeal the trial court's decision. On January 19, 2017, he filed his habeas petition.

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.' " *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (quoting 28 U.S.C. § 2254(d)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. Thus, "[o]nly an 'objectively unreasonable' mistake,

[*White v. Woodall*, 572 U.S. 415, 419 (2014)], one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v. Lee*, __ F.3d __, __, No. 17-6157, 2019 WL 4126667, at *2 (6th Cir. Aug. 30, 2019) (quoting *Richter*, 562 U.S. at 103). A state-court's factual determinations, moreover, are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. ANALYSIS

### A. Sufficiency of the Evidence

Horn alleges that there was insufficient evidence at trial to support his murder and carjacking convictions. The prosecution's theory was that Horn aided and abetted Riselay and Johnson in committing the crimes, but Horn contends that the record is devoid of any evidence of aiding and abetting the murder and carjacking. Horn asserts that the prosecution's aiding-and-abetting theory is no more reasonable than a number of other reasonable theories, which are consistent with his innocence.

Horn also maintains that there is no evidence he had the requisite intent for the crimes. He points out that he did not hand the murder weapon to Johnson, and he alleges that he had no reason to expect that Johnson would shoot anyone. He

contends that he asked Eason for a "clean" (legitimate) car, but that he did not promise his co-defendants anything in exchange for taking someone's car, and he did not encourage anyone to use the gun. The Michigan Court of Appeals determined on review of Horn's claim that there was sufficient evidence to support his murder and carjacking convictions on an aiding and abetting theory.

### 1. Clearly Established Federal Law

The critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citations and footnote omitted) (emphases in original). "Circumstantial evidence may support a conviction, *McKenzie v. Smith,* 326 F.3d 721, 727 (6th Cir. 2003), and such evidence need not remove every reasonable hypothesis except that of guilt. *Walker v. Russell,*

57 F.3d 472, 475 (6th Cir. 1995)." *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006).

Under the AEDPA, the Court's "review of a state-court conviction for sufficiency of the evidence is very limited," *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018), because *Jackson* claims are "subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*). First, it is the responsibility of the jury to decide what conclusions should be drawn from the evidence admitted at trial. *Johnson*, 566 U.S. at 650 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*)). "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Id*. (quoting *Cavazos*, 565 U.S. at 2).

> "[T]his standard is difficult to meet," no doubt, but "that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "[H]abeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id*. at 102-03 (internal quotation marks and citation omitted).

*Thomas*, 898 F.3d at 698.

## 2. Elements of the Crimes

The *Jackson* "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16, and in Michigan,

> [t]he elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v. Bailey*, 451 Mich. 657, 669, 549 N.W.2d 325 (1996).
>
> Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. *People v. Aaron*, 409 Mich. 672, 728, 299 N.W.2d 304 (1980).

*People v. Goecke*, 457 Mich. 442, 463; 579 N.W.2d 868, 878 (1998). "The facts and circumstances of the killing may give rise to an inference of malice. . . . Malice may also be inferred from the use of a deadly weapon." *People v. Carines*, 460 Mich. 750, 759; 597 N.W.2d 130, 136 (1999).

A person is guilty of carjacking if, during the commission of a larceny of a motor vehicle, the person "uses force or violence or the threat of force or violence, or . . . puts in fear any operator, passenger, or person in lawful possession of the motor vehicle, or any person lawfully attempting to recover the motor vehicle." Mich. Comp. Laws § 750.529a(1). The statute "requires a showing that the suspect (1) by force or threat of force, (2) took a motor vehicle (3) in the presence of the

lawful possessor of it." *People v. Chavis*, 468 Mich. 84, 97, 658 N.W.2d 469, 475–76 (2003) (Marilyn J. Kelly, J., dissenting).

> "Aiding and abetting" describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime . . . . To support a finding that a defendant aided and abetted a crime, the prosecutor must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. An aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime.

*Carines*, 460 Mich. at 757-58; 597 N.W.2d at 135 (quoting *People v. Turner*, 213 Mich. App. 558, 568-69; 540 N.W.2d 728, 733-34 (1995)).

### 3. Application

The Michigan Court of Appeals correctly summarized the evidence as follows:

> Horn was present in the motel room with Johnson and Riselay when he indicated the need to obtain a ride and Riselay asserted that he could steal a vehicle. The weapon used in the crimes belonged to Horn and he permitted Johnson and Riselay to leave the motel room, in the possession of his weapon, with knowledge they intended to steal a vehicle. Phillip Eason's testimony suggested that Horn provided the weapon to Riselay in lieu of being able to locate a screw driver to use in stealing the vehicle. Eason implied that Johnson owed Horn money

for drugs and that procurement of the vehicle would be in exchange either to secure additional drugs or pay off part of her debt. Horn's written statement to the police acknowledged Horn agreeing with Eason's verbal directive to Riselay to steal a vehicle along with responding, "What okay" in response to Riselay's verbal statement he would use the gun to scare the potential victim. Evidence was provided showing that Horn attempted to wipe his fingerprints off the stolen vehicle and was attempting to leave the motel when police arrived and he and the others were taken into custody.

*Horn*, 2014 WL 6804518, at \*2.

A rational juror could have concluded from the evidence adduced at trial that Horn aided and abetted Riselay and Johnson in the carjacking and murder by agreeing with a plan to steal a car and by providing Riselay and Johnson with a lethal weapon to accomplish the crime. Horn contends that there was insufficient evidence of an intent to commit the crimes, but, as the Michigan Court of Appeals pointed out:

Horn admitted knowledge that Riselay and Johnson intended to steal a vehicle in response to Horn's verbal assertion that he needed a ride. When Riselay suggested that he could steal a vehicle, Horn did not actively discourage Riselay but rather verbally implied that he should proceed. Horn provided the weapon used by Riselay and Johnson with knowledge of their intent to steal a vehicle and Riselay's specific admission that he would use the weapon to frighten and intimidate a potential victim.

*Id*. at \*3. The Court of Appeals opined that the evidence was sufficient to convict Horn on an aiding-and-abetting theory because he provided the weapon with

knowledge of its intended use, he knew Riselay and Johnson, and after the crime, he tried to eliminate evidence of his ties to the crime and to flee the motel.

At a minimum, a rational juror could have inferred from the evidence taken in the light most favorable to the prosecution that Petitioner intended to have Riselay and Johnson commit the carjacking and that he acted with wanton and wilful disregard of the likelihood that the natural tendency of providing Riselay and Johnson with a gun was to cause death or great bodily harm. As such, there was sufficient evidence of Horn's intent to commit a carjacking and murder, and the state appellate court's conclusion – that sufficient evidence existed to support Horn's convictions – was not contrary to, or an unreasonable application of, *Jackson*. Given the doubly deferential standard applicable to sufficiency-of-the evidence claims, Horn is not entitled to relief on his claim.

### B. The Sentence

#### 1. The Sentencing Guidelines and Accuracy of the Information

Horn alleges next that he is entitled to re-sentencing because the state trial court relied on inaccurate information at his sentencing and also incorrectly scored offense variables seven and eight of the Michigan sentencing guidelines. Horn contends that the trial court incorrectly scored fifty points for offense variable seven

(aggravated physical abuse) and fifteen points for offense variable eight (victim asportation or captivity).

The Michigan Court of Appeals agreed with Horn that the trial court erred when scoring offense variable seven, because Horn was not physically present during the carjacking and murder and there was no evidence that he encouraged his co-defendants to treat the victim with excessive brutality.

The Court of Appeals reached a similar conclusion on offense variable eight. The Court of Appeals noted that Horn was not present when the asportation of the victim occurred and, therefore, the trial court incorrectly scored fifteen points for offense variable eight. Despite the state appellate court's conclusions on offense variables seven and eight, the court declined to order re-sentencing because a correct scoring of the variables would not have changed the sentencing guidelines range.

Horn's contention that the trial court incorrectly applied Michigan's sentencing guidelines is not a cognizable claim here because an error "in applying the state sentencing guidelines raises an issue of state law only," *Garcia–Dorantes v. Warren,* 769 F. Supp. 2d 1092, 1112 (E.D. Mich. 2011), and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990)). Horn, nevertheless, claims that the trial court violated his constitutional right to due process by sentencing him on inaccurate information.

A sentence violates due process of law if the trial court relied on extensively and materially false information that the defendant had no opportunity to correct through counsel. *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To obtain relief, Horn must show that his sentence was "founded at least in part upon misinformation of constitutional magnitude." *United States v. Tucker*, 404 U.S. 443, 447 (1972).

Here, even if the trial court relied on incorrect information, the state appellate court determined that correcting the score for offense variables seven and eight would not alter the sentencing guidelines range. The state appellate court's interpretation of state sentencing law binds this Court on habeas corpus review, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005), and "[a]n error in Guidelines calculation is harmless if correcting the error would result in no change to the Guidelines offense level and sentencing range." *United States v. Cramer*, 777 F.3d 597, 603 (2d Cir. 2015). Because the alleged errors in scoring offense variables seven and eight did not affect the sentencing guidelines range, the trial court's alleged errors were harmless, and the sentence was not based on misinformation of constitutional magnitude. Horn is not entitled to relief on his claim.

## 2. Judicial Fact-Finding

Horn's final claim alleges that the trial court engaged in judicial fact-finding when scoring offense variables five through eight, fourteen, and nineteen. Horn

contends that judicial factfinding increased the floor of his sentence for second-degree murder in violation of *Alleyne v. United States*, 570 U.S. 99 (2013).

The Michigan Court of Appeals reviewed Horn's claim for "plain error" because he did not preserve the issue for appellate review by making proper objections at his sentencing. The Court of Appeals ultimately found no merit in Horn's claim about offense variables five, six, seven, eight, fourteen, and nineteen because the record evidence supported the trial court's scoring of those offense variables.

The Michigan Supreme Court reversed the Court of Appeals in part because it had recently held in another case that Michigan's sentencing guidelines violated the Sixth Amendment. *See People v. Lockridge*, 498 Mich. 358; 870 N.W.2d 502 (2015). The state supreme court applied *Lockridge* to Horn's case and ordered the trial court to determine whether the court would have imposed the same sentence absent the unconstitutional constraint on its discretion. On remand, the trial court declined to resentence Horn.

### a. Clearly Established Federal Law

The Sixth Circuit Court of Appeals recently explained that, "[b]y operation of the Sixth Amendment, '[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which

a criminal defendant is exposed.' " *Robinson v. Woods,* 901 F.3d 710, 715 (6th Cir. 2018) (quoting *Apprendi v. New Jersey*, 530 U.S. 466 (2000)), *cert. denied*, 139 S. Ct. 1264 (2019). "This rule applies equally to the states through the Due Process Clause of the Fourteenth Amendment." *Id*. So "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. The Supreme Court applied *Apprendi* to state sentencing guidelines in *Blakely v. Washington*, 542 U.S. 296, 303 (2004), "and explained that . . . 'the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.' " *United States v. West*, 392 F.3d 450, 459–60 (D.C. Cir. 2004) (quoting *Blakely*, 542 U.S. at 303).

In *Alleyne*, 570 U.S. at 99, the Supreme Court further expanded on *Apprendi* and stated:

> Any fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. *See* [*Apprendi*, 530 U.S. at 483 n. 10]. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an "element" that must be submitted to the jury.

*Id*. at 103.

After the Supreme Court issued its decision in *Alleyne*, the Michigan Supreme Court concluded in *Lockridge* "that Michigan's sentencing guidelines violate the Sixth Amendment rule from *Apprendi*, as extended by *Alleyne*." *Lockridge*, 498 Mich. at 389; 870 N.W.2d at 519. To remedy the problem, the Michigan Supreme Court held that Michigan's sentencing guidelines are now advisory. *Id.*, 498 Mich. at 399; 870 N.W.2d at 524. "*Lockridge* did not change how the guidelines ranges for minimum sentences were computed; the only change was that they were no longer binding on the sentencing judge." *Reign v. Gidley*, 929 F.3d 777, 779 (6th Cir. 2019). The "[f]ailure to submit a sentencing factor to the jury, [moreover], is not structural error," *Washington v. Recuenco*, 548 U.S. 212, 222 (2006), and this Court is not required to decide whether an error occurred under *Alleyne* if the error was harmless. *United States v. Soto*, 794 F.3d 635, 664 (6th Cir. 2015).

## b. Harmless Error

The last state court to adjudicate Horn's claim was the Michigan Supreme Court. It remanded Horn's case to the state trial court for a determination of whether the court would have imposed a materially different sentence for Horn's second-degree murder conviction if the sentencing guidelines had not been mandatory at the time. The supreme court ordered the trial court to follow the procedure described in Part VI of its opinion in *Lockridge* and then stated:

> If the trial court determines that it would have imposed the same sentence for that conviction absent the unconstitutional constraint on its discretion, it may reaffirm the original sentence. If, however, the trial court determines that it would not have imposed the same sentence for that conviction absent the unconstitutional constraint on its discretion, it shall resentence the defendant.

*Horn*, 498 Mich. at 896-97; 870 N.W.2d at 896.

The Michigan Supreme Court's decision was not contrary to, or an unreasonable application of, *Alleyne*, and on remand, the trial court declined to re-sentence Horn. *See People v. Horn*, No. 12-30550FC (Genesee Cty Cir. Ct. November 19, 2015) (Docket No. 1, PageID. 15). Although the trial court did not provide a reason for its decision, the implication was that the trial court would have ordered Horn to serve the same sentence if the sentencing guidelines had been advisory when it initially sentenced Horn.

The use of advisory guidelines that recommend, rather than require, the selection of particular sentences in response to differing sets of facts do not implicate the Sixth Amendment. *United States v. Booker*, 543 U.S. 220, 233 (2005). Therefore, the trial court did not violate *Alleyne* on remand when the state sentencing guidelines were no longer mandatory, and any improper judicial fact-finding at the original sentencing was harmless. Horn is not entitled to relief on his claim. *See Orrick v. Macauley*, No. 19-1240, 2019 WL 2454856, at *3 (6th Cir. May 8, 2019)

(affirming the district court's finding that the petitioner's claim under *Alleyne* was harmless, because the state trial court said that it would have imposed the same sentence whether the guidelines were mandatory or advisory).

## IV. CONCLUSION AND ORDER

The state appellate courts' rejection of Horn's claims did not result in decisions that were contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable determinations of the facts. The state appellate court decisions also were not so lacking in justification that there was an error beyond any possibility for fairminded disagreement. The Court, therefore, denies the petition for a writ of habeas corpus.

The Court declines to issue a certificate of appealability because reasonable jurists could not disagree with the Court's resolution of Horn's constitutional claims, nor conclude that the claims deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). If Horn decides to appeal this decision, he may proceed *in forma pauperis* on appeal because he was granted pauper status in this Court, and an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

s/Denise Page Hood
Dated: October 31, 2019          Chief Judge, United States District Court